# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
September 12, 2000, Session

## STATE OF TENNESSEE v. RONALD DAVID "BOO" BALLARD

**Direct Appeal from the Circuit Court for Henderson County**
**No. 96-276, Roy Morgan, Judge**

---

**No. W2000-00033-CCA-R3-CD - Decided - October 25, 2000**

---

The appellant, Ballard, was found guilty by a jury of facilitating first degree murder. Following a sentencing hearing, the trial court imposed a sentence of twenty-five years, the maximum sentence permitted for a class A felony. Ballard now appeals the sentencing decision of the lower court, arguing that the court erred in its application of two enhancing factors and failed to apply a mitigating factor. Finding the record incomplete for review of these issues, the trial court's sentencing determination is afforded the presumption of correctness and the sentence is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Carthel L. Smith, Jr., Lexington, Tennessee, for the appellant, Ronald David "Boo" Ballard.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Mark E. Davidson, Assistant Attorney General, James G. Woodall, District Attorney General, and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, Ronald David "Boo" Ballard, was found guilty by a Henderson County jury of one count of criminal responsibility for facilitation of first degree murder resulting from the 1994 homicide of Jeanna Diane Washburn.[1] The trial court imposed a sentence of twenty-five years confinement in the Department of Correction. The sole issue raised on appeal is whether the sentence imposed is excessive.

---

[1] The appellant was indicted for the first degree premeditated murder of Jeanna Diane Washburn. The State filed notice of its intent to seek the death penalty relying on the aggravating circumstances that the murder was "heinous, atrocious, or cruel" and that the murder was committed in the perpetration of a felony.

After review, we affirm.

## Background

No transcript of the evidence at trial is included in the record. The following facts are excerpted from the presentence report for background purposes:

> Jeanna Diane Washburn was reported missing by her family after she left her parent's home on highway 104 South on May 6, 1994. Washburn, who had cerebral palsy, walked to her own home, just across the road from her parents. When her father checked the house a couple of hours later, the lights were on. The next morning, he found the front door partially open and his daughter missing. On August 20, 1996, Sheriff's Department and TBI officers discovered human remains at a former sawmill site on Phillips Road, off Highway 104 North of I-40, 11 miles from the Washburn residence. Besides the scattered skeletal remains, fragments of clothing were found within a 60-foot radius north of the scatter of bones. Forensics experts identified the remains as Ms. Washburn's. Ronald Ballard claimed it was his wife who beat Washburn with a tire iron, while she maintained it was he.[2]

The appellant provided the following statement:

> I help [sic] hide the fact my wife had killed my ex-girlfriend, even though I didn't know before hand what was going to happen, I take full responsibility for not contacting the police, and helping my wife avoid arrest.

The presentence report reveals that the appellant was twenty-three years old at the time of the homicide. At the time of his arrest, he was on parole, which was subsequently revoked in March of 1996 due to new charges of forgery, theft of property, and possession of stolen property. The appellant was returned at this time to TDOC custody. This sentence, however, expired on November 17, 1999, at which time he was returned to the Madison County Criminal Justice Complex pending trial on the first degree murder charge. The appellant has a prior criminal history consisting of convictions for numerous traffic offenses, public intoxication, burglary, aggravated burglary, vandalism, hindering a secured creditor, numerous charges of theft of property less than $500, theft

---

[2]The appellant's now estranged wife, Tanya H. Ballard, was eighteen years old at the time of the homicide. She was originally indicted on October 7, 1996, on one count of facilitation of first degree murder. An order of nolle prosequi was subsequently filed by the State on December 7, 1998. In February 1999, Tanya Ballard was reindicted on the charges of first degree murder; facilitation; and murder in the commission of a felony. On April 16, 1999, an order of nolle prosequi was again filed by the State. An information charging Ms. Ballard with first degree murder, facilitation to commit second degree murder, and aggravated assault was filed by the State on July 8, 1999. Ms. Ballard waived presentment to the grand jury and on July 12, 1999, she entered a guilty plea to aggravated assault, for which a suspended sentence of three years was imposed. Pursuant to her negotiated plea agreement, the remaining counts were to be disposed of following Tanya Ballard's testimony at her husband's trial. The record is silent as to the disposition of these charges.

of property less than $1,000 and theft of property less than $10,000, for a total of twenty-four prior convictions. At the time the presentence report was prepared, the appellant denied use of alcohol and stated that he had used marijuana "very rarely" in the past. Notwithstanding this self-report, a 1992 TDOC classification report indicated that the appellant had admitted to both alcohol and drug abuse.

In addition to the proof contained in the presentence report, the following testimony was presented at the sentencing hearing. Cathy Blankenship, the victim's sister, testified that Jeanna Washburn, the thirty-four-year-old victim, "was born with what was called cerebral palsy. She had a physical disability. She couldn't walk. Her mental capacity, to know her, you were looking at a twelve-year-old child." She explained that her sister could easily be "led astray" by someone else. Notwithstanding the victim's mental and physical limitations, she lived alone in a residence across the street from her parents. Jeanna Washburn was able to clean the house but was unable to "fix a meal," "[t]hat's the reason she ate with my parents every night." Additionally, Jeanna Washburn

> could not manage money well. When she got her check, she did have enough sense about her that she would go pay her monthly bills first. What money was left, my mother kept, and when she needed money to buy stuff with, they would give her like $20, $30, and that way she could live on what she drawed [sic] a month.[3]

Ms. Blankenship added that her father would assist the victim in paying her bills. Additionally, the victim had a driver's license and would drive her parents' vehicle. The victim graduated from high school through taking special education classes and she had been married at one time.

In offer of mitigation, several of the appellant's acquaintances testified that they knew of no instance where the appellant had ever exhibited violent behavior. Additionally, Martha Sue Ballard, the appellant's mother, testified that she had known the Washburn family all her life. Specifically, she noted a friendship between the appellant and Jeanna. Regarding the appellant's now estranged wife, Tanya, Mrs. Ballard stated that Tanya "was very domineering" and would often threaten the appellant.

The appellant testified at the sentencing hearing and confirmed his prior convictions for one class C felony and multiple class D and E felonies. He admitted that, at the time of Jeanna Washburn's death, he was on parole stemming from sentences imposed for multiple property related crimes. In January 1996, he was revoked from parole, however, this sentence had expired prior to the trial. The appellant admitted that he had in the past had a sexual relationship with the victim and that his wife, upon learning of this fact, had become angry. The appellant expressed his remorse to the victim's family over her death. He denied, however, that he harmed the victim in any way but admitted, "Leaving Jeanna laying out there was hard, and I was messed up on pills and everything, but there's still no excuse."

---

[3]The victim received SSI disability benefits.

With reference to the challenged enhancing factors and the nonapplied mitigator, the trial court entered the following findings:

> As to Number 4, the State alleges the victim of the offense was particularly vulnerable because of age or physical or mental disability. In this case, although the proof shows that this victim, Jeanna Washburn, graduated from high school with the help of special ed, was able to drive an automobile and was married at one time, she still suffered from cerebral palsy. She had a mental defect, and it was evident to all that knew her and I believe rendered her somewhat incapacitated or less than capable of the average person in making decisions that might have affected even her decision that day to be with those individuals in that location. So the Court finds the State's established that by a preponderance of the evidence.
>
> As to Number 9, the Defendant possessed or employed a firearm, explosive device or other deadly weapon, and in this case we're talking about a deadly weapon without a doubt during the commission of this offense. The jury found this Defendant guilty of facilitation. I was not there. I do not know the individual discussions of the jurors at the time, but I do know they found him guilty of facilitation. That facilitation could have involved the use of that tire tool on that particular occasion that resulted in the death of Jeanna Washburn, and I find from the proof this Defendant has been established by preponderance of the evidence in this case.
>
> As to the mitigating factors in this case, Number 12, the Defendant acted under duress or under the domination of another person . . . the Court does not find that's been established by the preponderance of the evidence. Mr. Boo Ballard, I'm convinced from the proof . . . could have stood his ground on that particular occasion and possibly saved the life of Jeanna Washburn.
>
> . . .[N]or do I find any other mitigating factor or factors . . . that would be consistent with the purpose of the Tennessee Criminal Sentencing Act. . . .
>
> . . . [C]onsidering all of the enhancing factors that have been found today and the lack of any mitigating factors under the circumstances, and considering the Court stated with the presumptive sentence of 20 years . . . the Court feels that under the circumstances, a 25-year sentence, that being the maximum sentence I can impose under the law, would be appropriate, and I do hereby sentence you to the term of 25 years to the Tennessee Department of Correction.

**Analysis**

-4-

This court's review of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is only applicable if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appellant to show that the sentence imposed was improper. Id.; State v. Fletcher, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991); Sentencing Commission Comments, Tenn.Code Ann. § 40-35-401(d). The record reflects that the trial court considered the relevant principles of sentencing; accordingly, the presumption is afforded.

The trial court found six enhancement factors applicable: (1) prior history of criminal convictions; (4) vulnerability of the victim; (5) victim treated with exceptional cruelty; (8) unwillingness to comply with sentences involving release in the community; (9) deadly weapon employed during commission of the offense; and (13) felony committed while on parole. See generally Tenn. Code Ann. § 40-35-114(1), (4), (5), (8), (9), (13) (1997). The court found no mitigating factors applicable. The trial court properly determined that the appellant was a Range I offender of a class A felony with an applicable sentencing range of "not less than fifteen (15) nor more than twenty-five (25) years." Tenn. Code Ann. § 40-35-112(a)(1)(1997). When there are enhancement factors and no mitigating factors, the trial court may set the sentence at or above the midpoint of the range. Tenn. Code Ann. § 40-35-210(d); see also Tenn. Code Ann. § 40-35-210(c). After weighing the enhancement factors, the trial court imposed the maximum twenty-five year sentence.

In this appeal, the appellant contends that the trial court misapplied enhancement factors (4), vulnerability of the victim, and (9), use of deadly weapon during commission of the offense. He additionally argues that the trial court failed to apply mitigating factor (12), the defendant acted under domination of another person. See Tenn. Code Ann. § 40-35-113(12) (1997). Although the appellant requests that we conduct a *de novo* review of his sentence, the request is hindered by the lack of a complete record. In imposing a sentence, the trial court is required to consider "the nature and circumstances of the criminal conduct involved." Tenn.Code Ann. § 40-35-210(b)(4) (1999 Supp.). If these "circumstances" which are contained in the transcript of the evidence at trial are omitted, obviously, we are either precluded or handicapped in our *de novo* review.

In the present case, the appellant failed to include a transcript of the trial proceedings. The particular enhancing and mitigating factors challenged by the appellant were developed at trial and not at the sentencing hearing. The evidence presented at the sentencing hearing was sparse at best and most often contradictory as to the appellant's role in the homicide. Moreover, the majority of the circumstances of the offense were presented through argument of both counsel for the State and for the defense. It is well-established that argument of counsel is not evidence. See State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Likewise, neither are the recitation of facts nor argument of counsel contained in the briefs. Id. (citations omitted). We have repeatedly and exhaustively held that the failure to include the transcript of relevant proceedings in the record prohibits this court from conducting a meaningful *de novo* review. If the appellate record is inadequate, the reviewing court must presume that the trial court ruled correctly. State v. Ivy, 868

S.W.2d 724, 728 (Tenn. Crim. App.1993). The obligation of preparing a complete and adequate record for the issues presented on appeal rests upon the appealing party. <u>See</u> Tenn. R. App. P. 24(b). For this reason, we must necessarily conclude that the trial court properly applied enhancement factors (4) and (9) and properly refused to apply mitigating factor (12). Furthermore, given the presence of six enhancement factors and no mitigating factors, a sentence of twenty-five years for this offense is justified. Accordingly, we conclude that the appellant has failed to meet his burden of showing that the sentencing decision of the trial court was improper. This issue is without merit.

Finding no error in the sentencing decision of the trial court, the appellant's sentence of twenty-five years is affirmed.

_____
DAVID G. HAYES, JUDGE